In the Matter of MARTIN MENACK, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 22, 1983

#### APPEARANCES OF COUNSEL

*Joseph Rosenberg* of counsel (*Michael A. Gentile,* attorney), for petitioner.

No appearance on behalf of respondent.

#### OPINION OF THE COURT

*Per Curiam.*

Respondent was admitted to the Bar on October 14, 1959 by the Appellate Division, Second Department. In recent years, at least, he has maintained an office in this department. Sometime in the first week of December, 1980 he was called to the Westchester Square Hospital in The Bronx to draw the will of Ruth Scocozza who had suffered a massive heart attack. There he met Ruth Goyner, a stepdaughter of Mrs. Scocozza, who had been summoned from her home in Fitchberg, Massachusetts, to attend at the bedside of her stepmother. He listened to the instructions given him by Mrs. Scocozza and thereafter drew the requested will which was executed on December 10, 1980. By

its terms a small bequest and certain furniture and personal belongings were left to Mrs. Goyner with the residuary estate going to Mrs. Ruth Farrell, Mrs. Scocozza's niece. Respondent was named as executor of the will. Mrs. Scocozza died a few days later. At her wake which took place on December 21, 1980 respondent approached both Mrs. Goyner and Mrs. Farrell and informed both ladies that he would need funds for funeral expenses. Mrs. Farrell gave him a check for $250 and Mrs. Goyner gave him $217, the amounts requested by him. He informed both women that the estate would be settled in about two weeks.

Respondent failed to offer the will for probate. Moreover, there is no proof that he paid the funeral director any portion of the moneys given to him by Mrs. Goyner and Mrs. Farrell. Although he was contacted by telephone by Mrs. Goyner on eight separate occasions and promised to take action with respect to the will, he did nothing. Ultimately, on July 27, 1981, a complaint was filed by Mrs. Goyner with the Departmental Disciplinary Committee. Notice of the complaint was forwarded to respondent on August 5, 1981, with a request that he reply within 20 days. No response thereto was received and on August 31, 1981, a second letter was sent informing him that his continued neglect or refusal to respond might subject him to a formal charge of professional misconduct flowing from his failure to co-operate with the committee. Respondent did not answer this letter. Subsequently, respondent was reached by telephone by a staff member of counsel to the committee. He agreed, at that time, to deliver a statement to the committee by September 22, 1981. No such statement was received by the committee. On October 5, 1981, the committee attempted, without success, to serve a subpoena upon respondent. To insure that respondent knew of the attempt to serve him the process server left his business card. The following day respondent telephoned the committee and informed it that he would appear at its office on October 9, 1981 to make a statement. On October 9 he neither appeared nor did he seek to explain his nonappearance.

After eight additional unsuccessful efforts were made to serve a subpoena upon him, respondent telephoned a staff

member of counsel to the committee and informed him that he would call on November 9 to schedule an appointment for that day. Respondent neither telephoned nor appeared on November 9.

On November 12 the committee transmitted a letter to respondent, by regular and certified mail, requesting respondent's presence at the committee office on November 23 at 2:00 P.M. for a question and answer session with relation to the Goyner complaint. The return receipt indicates delivery of the certified mail letter at defendant's office on November 17. On November 23 respondent telephoned the committee and indicated that he could not appear that day. He stated that he desired to retain counsel and would call back later that day to arrange a new appointment. Respondent never called back nor did he appear before, or submit a statement to, the committee in connection with the Goyner complaint.

Accordingly, on January 29, 1982 the committee served formal charges upon respondent. These charges were two in number; neglecting a legal matter entrusted to him in violation of DR 6-101 (A) (3) of the Code of Professional Responsibility and failure to co-operate with the office of the Departmental Disciplinary Committee in its investigation of a complaint of professional misconduct in violation of DR 1-102 (A) (5) of the Code of Professional Responsibility. The committee designated a panel of its members to take evidence and to report to this court on its findings and conclusions. Hearings were held on March 10, 1982 and April 7, 1982. Although notice of each hearing was served upon respondent he appeared at neither.

Following the hearings the hearing panel submitted its findings and conclusions in which it determined that respondent should be suspended and that an attorney be designated to probate the will of Ruth Scocozza. The committee moved that the findings and conclusions of the hearing panel be confirmed. By order dated May 27, 1982 we directed that respondent immediately turn over the Scocozza will to counsel for the committee, suspended him from the practice of law without specifying any duration for the suspension, directed the committee to take possession of and inventory respondent's files pertaining to his

clients, and held the balance of the application in abeyance. By order dated July 1, 1982 we substituted Jonathan R. Morris, Esq., c/o Seward and Kissell, Wall Street Plaza, New York City in the place and stead of the committee to inventory respondent's files. Mr. Morris has reported to this court. The report indicates that respondent was as unco-operative in his dealings with Mr. Morris as he was with the committee and that, therefore, he has been unable to effect a proper inventory. Based on the report of Mr. Morris, the failure of respondent to produce the Scocozza will so that it might be offered for probate and the substantial expenses incurred by the beneficiaries of the estate for storage fees for furniture and other property comprising part of the estate, the committee now moves that respondent be disbarred.

Respondent has been offered many opportunities to come forward and explain his conduct. He has failed to do so. Indeed, he had made no response to this application for his disbarment.

Most telling in the litany of complaints, charged and uncharged, is a statement in the report of Mr. Morris. At their first (and only) meeting respondent was asked whether he had notified his clients of his suspension. Respondent told Mr. Morris that in addition to being an attorney he is also a certified public accountant. Many of his clients as an attorney are also his clients as an accountant. Since he desired to continue to represent them as an accountant, he did not notify them that he had been suspended. He merely informed them that he could no longer represent them as an attorney without telling them why. Such conduct is in direct violation of 22 NYCRR 603.13 (c) and (d) which require that an attorney promptly notify his clients, by registered or certified mail, that he has been suspended, disbarred or has resigned from the Bar.

While respondent has not been charged with or found guilty of conduct venal in nature, the charges and the findings made all indicate that respondent lacks the character requisite to the practice of law. Accordingly, we are of the opinion that respondent should be disbarred.

MURPHY, P. J., SULLIVAN, BLOOM, FEIN and ASCH, JJ., concur.

Respondent's name is stricken from the roll of attorneys and counselors at law in the State of New York.